UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

PATTY LEE CUMMINGS,
Plaintiff,

v. Case No.:

MARTIN J. KENNEY, individually and in his official capacity as an Investigator for the Office of the State Attorney, Twentieth Judicial Circuit of Florida,
Defendant.
_______________________________________/

**COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS PURSUANT TO 42 U.S.C. § 1983 AND DEMAND FOR JURY TRIAL**

Plaintiff, PATTY LEE CUMMINGS ("Plaintiff"), by and through undersigned counsel, brings this action against Defendant MARTIN J. KENNEY ("Defendant"), individually and in his official capacity, for violations of her constitutional rights, and alleges as follows:

**INTRODUCTION**

This action arises from the extraordinary misuse of governmental investigative authority to transform a disputed question of municipal residency into three felony charges, an arrest warrant, and a criminal prosecution. Florida law does not impose a single, universal definition of residency for every legal purpose. Instead, legal residency requires consideration of the governing statutory provisions and relevant circumstances, including physical presence, intent, domicile, and temporary displacement. Despite these established principles, Defendant Martin J. Kenney pursued felony charges against Plaintiff

Patty Lee Cummings based upon an inflexible and legally deficient interpretation of residency that failed to give appropriate weight to the substantial evidence obtained during his own investigation. Defendant's investigative materials documented Plaintiff's residential history, her displacement following Hurricane Ian, and circumstances supporting her claimed residency. Nevertheless, Defendant characterized disputed facts concerning Plaintiff's residential arrangements as evidence of deliberate criminal fraud. The Constitution does not permit a government investigator to procure an arrest through materially misleading representations or reckless disregard for the truth. Nor may governmental entities maintain unconstitutional investigative policies or customs that foreseeably result in the deprivation of constitutional rights. Plaintiff accordingly brings this action under 42 U.S.C. § 1983 for false arrest and malicious prosecution, asserting individual-capacity claims against Defendant and official-capacity claims premised upon the municipal-liability principles recognized in Monell.

## I. JURISDICTION AND VENUE

1. This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.
2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).
3. Plaintiff seeks damages for violations of her constitutional rights committed under color of state law.
4. Plaintiff asserts individual-capacity claims against Defendant for his personal participation in the alleged unconstitutional conduct.

5. Plaintiff additionally asserts official-capacity claims under the governmental-liability principles recognized in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), to the extent Defendant's challenged conduct is attributable to a legally responsible local governmental entity acting pursuant to an official policy, established custom, or decision of a final policymaker.
6. Venue is proper pursuant to 28 U.S.C. § 1391(b), because the events giving rise to this action occurred substantially within Lee County, Florida.

## II. PARTIES

7. Plaintiff, Patty Lee Cummings, is a natural person residing in Florida.
8. Defendant, Martin J. Kenney, was at all material times an investigator employed by the Office of the State Attorney for the Twentieth Judicial Circuit of Florida.
9. Defendant was responsible for investigating allegations concerning Plaintiff's residency and eligibility to serve on the Cape Coral City Council.
10. Defendant personally prepared and submitted the sworn affidavit supporting the arrest warrant issued against Plaintiff.
11. Defendant acted under color of state law at all material times.
12. Defendant is sued individually for his direct participation in the alleged unconstitutional investigation and procurement of criminal legal process.
13. Defendant is also sued in his official capacity to the extent the conduct alleged herein is legally attributable to a governmental entity subject to liability under § 1983.

## III. GENERAL FACTUAL ALLEGATIONS

**A. Plaintiff's Residency and Election**

14. Plaintiff was a candidate for the Cape Coral City Council District 4 seat during the 2022 municipal election.
15. Plaintiff maintained that she satisfied the applicable residency requirements.
16. Plaintiff's residential history included addresses at 2842 SW 50th Terrace, 2425 Embers Parkway West, 3827 Palm Tree Boulevard, and 318 SE 21st Street, Cape Coral, Florida.
17. The significance of these addresses depended upon the applicable statutory and municipal requirements and the relevant circumstances surrounding Plaintiff's occupancy and intent.
18. On November 8, 2022, Plaintiff was elected to the Cape Coral City Council District 4 seat.

**B. Florida's Residency Standards**

19. Florida law recognizes that legal domicile and temporary physical presence are distinct concepts.
20. In *Minick v. Minick*, 111 Fla. 469, 149 So. 483 (1933), the Florida Supreme Court explained that legal domicile involves a fixed abode accompanied by the present intention of making that location one's permanent home.
21. In *Bloomfield v. City of St. Petersburg Beach*, 82 So. 2d 364 (Fla. 1955), the Florida Supreme Court addressed the significance of an individual's conduct and declarations in determining legal residence.

22. In *Keveloh v. Carter*, 699 So. 2d 285 (Fla. 5th DCA 1997), the court recognized the distinction between temporary residence and domicile and the principle that an established domicile ordinarily continues until another is acquired.
23. These principles demonstrate that Florida residency determinations cannot automatically be reduced to uninterrupted physical occupancy at a single address.
24. A temporary absence from a residence, including an absence caused by extraordinary circumstances, does not necessarily establish abandonment of legal domicile.
25. Similarly, changes in mailing addresses, temporary accommodations, and the use of multiple properties do not independently establish criminal fraud.
26. The legal requirements for municipal candidacy, voter registration, and driver's license applications must be evaluated under their respective governing provisions.
27. Plaintiff alleges that Defendant improperly treated these distinct residency questions as though they were governed by one inflexible rule.

**C. Hurricane Ian and Plaintiff's Residential Circumstances**

28. On or about September 28, 2022, Hurricane Ian struck Southwest Florida.
29. Defendant's investigation documented that Plaintiff and her family had resided at 2842 SW 50th Terrace before the hurricane.
30. The investigation further documented that Hurricane Ian caused substantial damage to that residence, rendering it uninhabitable.

31. Plaintiff temporarily relocated to Orlando before obtaining temporary accommodations at 2425 Embers Parkway West.
32. Defendant obtained witness statements confirming Plaintiff's occupancy of SW 50th Terrace before the hurricane.
33. The investigation also documented circumstances concerning Plaintiff's asserted residential arrangements at 3827 Palm Tree Boulevard.
34. Certain witnesses disputed the extent of Plaintiff's actual occupancy at that property.
35. However, those factual disputes required evaluation under the applicable residency standards and did not automatically establish that Plaintiff knowingly made false representations.
36. Defendant's investigation included information regarding Plaintiff's voter registration, driver's license records, utility records, property arrangements, and statements from individuals familiar with her residential history.
37. These circumstances were relevant to the determination of whether Plaintiff had knowingly made a materially false statement.
38. Plaintiff alleges that Defendant failed to properly distinguish between conflicting evidence concerning residency and evidence establishing intentional criminal wrongdoing.

**D. Defendant's Investigation**

39. On or about June 27, 2023, the State Attorney's Office received a referral alleging that Plaintiff had misrepresented her legal residence.

40. Defendant conducted an investigation designated State Attorney Investigative Case No. 2023-000037SI.

41. Defendant interviewed witnesses and reviewed records concerning Plaintiff's residential history.

42. Defendant's investigative materials acknowledged that legal residency is a fact-intensive determination involving physical presence and intent.

43. The investigation also documented that voter-residency determinations involve consideration of multiple factors.

44. Nevertheless, Defendant ultimately concluded that Plaintiff had intentionally misrepresented her permanent legal residence.

45. Plaintiff alleges that Defendant's conclusions materially overstated the significance of disputed occupancy evidence and failed to properly account for circumstances inconsistent with deliberate fraud.

46. Defendant's conclusions formed the basis of the criminal charges subsequently brought against Plaintiff.

**E. The Arrest Warrant**

47. On November 1, 2023, Defendant executed a sworn affidavit alleging probable cause to charge Plaintiff with three felonies.

48. The first charge alleged fraudulent application for a driver's license or identification card under Florida Statutes § 322.212(5)(a).

49. The second and third charges alleged false swearing in connection with or arising out of voting or elections under Florida Statutes § 104.011(1).

50. Defendant alleged that Plaintiff had knowingly and intentionally misrepresented her legal residency.
51. On November 9, 2023, a circuit judge in Lee County issued an arrest warrant.
52. The warrant was executed on November 13, 2023.
53. Plaintiff was thereby subjected to arrest pursuant to criminal legal process based upon Defendant's sworn representations.
54. Plaintiff alleges that Defendant's affidavit presented disputed residency circumstances as conclusive evidence of intentional criminal conduct.
55. Plaintiff further alleges that Defendant knowingly or recklessly disregarded the exculpatory significance of information obtained during his investigation.
56. Plaintiff contends that the resulting probable-cause determination was constitutionally defective because the affidavit materially mischaracterized the relationship between the evidence, governing legal standards, and elements of the charged offenses.

**F. Constitutional Violations**

57. The Fourth Amendment protects individuals from unreasonable seizures.
58. The existence of a judicially issued warrant does not automatically insulate an investigator who procures that warrant through intentional or reckless material misrepresentations.
59. In *Paez v. Mulvey*, 915 F.3d 1276 (11th Cir. 2019), the Eleventh Circuit addressed the constitutional consequences of material misstatements and omissions in arrest-warrant affidavits.

60. In *Williams v. Aguirre*, 965 F.3d 1147 (11th Cir. 2020), the Eleventh Circuit recognized Fourth Amendment liability arising from constitutionally defective legal process used to justify a seizure.

61. Plaintiff alleges that Defendant's actions were objectively unreasonable because he presented legally disputed circumstances as proof of intentional criminal fraud without constitutionally sufficient probable cause.

62. Plaintiff alleges that Defendant's conduct directly and foreseeably caused her arrest and the initiation of criminal proceedings.

**G. Defendant's Materially Misleading Statements, Omissions, and Knowledge of the Uncertain Residency Standard**

63. Defendant's sworn affidavit demonstrates that he was aware of substantial factual uncertainty concerning Plaintiff's legal residency and that Florida law did not provide a single, mechanically applicable test for resolving the question.

64. Nevertheless, Defendant represented to the issuing court that probable cause existed to believe Plaintiff had knowingly and intentionally committed three felony offenses arising from allegedly false representations concerning her residence.

65. Defendant's conclusions were not merely factual observations. They depended upon resolving disputed questions of domicile, physical occupancy, intent, and the legal significance of temporary residential arrangements.

66. Defendant's affidavit expressly acknowledged that the Florida Department of State, Division of Elections, recognized legal residency as a fact-intensive determination.

67. Specifically, Defendant incorporated the Department's guidance stating: "Legal residence - Permanent. Legal residency is not defined in law."

68. The same guidance explained that legal residency requires consideration of multiple circumstances, including the individual's conduct and intent, and that no single item of evidence necessarily establishes residency conclusively.

69. Defendant therefore knew, before seeking Plaintiff's arrest, that the applicable residency determination could not be resolved solely by identifying the address where Plaintiff slept, received mail, or maintained a particular record.

70. Defendant also possessed information concerning Plaintiff's residential history, her claimed residency in District 4, and the circumstances surrounding her displacement following Hurricane Ian.

71. Despite that knowledge, Defendant concluded that Plaintiff's representations were knowingly and intentionally false, without adequately distinguishing between an incorrect or disputed residency claim and a deliberately fraudulent statement.

72. Defendant's affidavit specifically alleged that Plaintiff used an address that was not her fixed abode or permanent residence.

73. However, Defendant's own investigation disclosed evidence concerning Plaintiff's asserted residential arrangements at 3827 Palm Tree Boulevard,

including statements concerning her permission to use the property and her claimed intention to establish residency there.

74. Defendant interviewed Jill Hiatt, who acknowledged providing Plaintiff access to the Palm Tree Boulevard property and discussing Plaintiff's potential residential arrangements.

75. Hiatt also disputed whether Plaintiff actually established residence there and stated that she could not confirm that Plaintiff resided in the home.

76. The existence of this conflicting evidence was materially different from an undisputed factual showing that Plaintiff knowingly fabricated a residential address.

77. Defendant's affidavit further documented that Plaintiff had resided at 2842 SW 50th Terrace before Hurricane Ian and that the hurricane caused substantial damage to that property.

78. Defendant knew that Plaintiff subsequently obtained temporary accommodations at 2425 Embers Parkway West following her displacement.

79. Defendant also documented witness statements concerning Plaintiff's actual occupancy of SW 50th Terrace before the hurricane, including accounts from individuals familiar with her residence and campaign activities.

80. These facts were relevant to determining whether Plaintiff's residential arrangements reflected intentional deception or a combination of temporary displacement, changing circumstances, and disputed legal residency.

81. Defendant's affidavit further included the account of Cape Coral City Councilmember Robert Welsh, who described Plaintiff's residential arrangements and campaign activities.

82. Welsh acknowledged circumstances concerning Plaintiff's occupancy and use of addresses within Cape Coral, including the effects of Hurricane Ian upon her living arrangements.

83. Defendant's investigation additionally documented information from Cape Coral City Councilmember Daniel Sheppard concerning the residency requirements applicable to candidates for municipal office.

84. Sheppard described the residency requirement as involving actual residence within the relevant district but also discussed the practical uncertainty surrounding the qualification process.

85. Defendant thus knew that even individuals familiar with municipal elections and candidate qualifications expressed differing understandings of how the residency requirements applied to particular circumstances.

86. Defendant further knew that the City Attorney's Office had previously issued opinions addressing the meaning of residency under the Cape Coral City Charter.

87. Those opinions addressed the relationship between physical presence, intent, and the establishment of a new domicile.

88. The existence of those legal interpretations further demonstrated that the residency question required legal analysis rather than an automatic inference of criminal wrongdoing from inconsistent addresses.

89. Nevertheless, Defendant's ultimate probable-cause conclusion treated the evidence as establishing that Plaintiff intentionally maintained fraudulent residency representations.

90. Plaintiff alleges that this conclusion materially overstated what the underlying evidence established concerning Plaintiff's knowledge and intent.

91. Defendant's affidavit also relied upon differences between Plaintiff's driver's license information, voter registration information, mailing addresses, and physical occupancy.

92. However, the existence of different addresses in governmental records does not, standing alone, establish that an individual knowingly made a materially false statement under Florida Statutes §§ 322.212(5)(a) or 104.011(1).

93. Defendant was required to distinguish the legal requirements of those separate offenses and evaluate the evidence relevant to each alleged false statement.

94. Plaintiff alleges that Defendant instead relied upon a generalized conclusion concerning Plaintiff's permanent residence to support multiple distinct criminal accusations.

95. This approach was particularly significant because Defendant's own investigation identified circumstances that complicated any definitive conclusion concerning Plaintiff's legal domicile.

96. Plaintiff alleges that Defendant's representations were materially misleading insofar as they conveyed a degree of certainty concerning intentional falsity that was not supported by the underlying investigative evidence.

97. Defendant's knowledge of the Department of State's residency guidance, the municipal legal opinions, conflicting witness accounts, and Plaintiff's documented residential circumstances is relevant to whether he acted knowingly or with reckless disregard for the truth.

98. Under *Paez v. Mulvey*, 915 F.3d 1276 (11th Cir. 2019), material misrepresentations or omissions in a warrant affidavit may violate the Fourth Amendment when made intentionally or recklessly and when necessary to the finding of probable cause.

99. Similarly, *Williams v. Aguirre*, 965 F.3d 1147 (11th Cir. 2020), recognizes that an investigator may violate the Fourth Amendment by procuring criminal legal process through materially false or misleading representations.

100. Plaintiff alleges that a corrected affidavit would have distinguished between the facts demonstrating physical occupancy, the evidence concerning Plaintiff's intent, and the legal requirements governing each charged offense.

101. Such an affidavit would have expressly addressed the Department of State's recognition that legal residency is fact-specific and not established conclusively by any single circumstance.

102. It would also have accurately conveyed the limitations of the witness testimony concerning Plaintiff's residential arrangements, including the distinction between witnesses who could not confirm continuous occupancy and witnesses who possessed affirmative evidence of nonoccupancy.

103. It would have evaluated Plaintiff's hurricane-related displacement and temporary residential arrangements without automatically treating those circumstances as proof of abandonment of legal domicile.

104. It would further have distinguished a disputed legal conclusion concerning residency from affirmative evidence that Plaintiff knew a particular representation was false when she made it.

105. Plaintiff contends that, when evaluated under the correct legal standards and with appropriate consideration of the materially relevant evidence, the affidavit did not establish probable cause to believe Plaintiff knowingly and intentionally committed the charged offenses.

106. Plaintiff alleges that Defendant's presentation of the evidence therefore resulted in the procurement of criminal legal process unsupported by constitutionally sufficient probable cause.

107. Defendant's conduct caused Plaintiff to be subjected to an arrest warrant, criminal charges, and a resulting deprivation of liberty.

108. Plaintiff alleges that Defendant's knowing or reckless presentation of materially misleading factual assertions violated her rights secured by the Fourth Amendment.

109. Defendant Martin J. Kenney personally conducted the investigation into Plaintiff's alleged residency violations, gathered and evaluated witness statements and documentary evidence, and personally executed the sworn probable-cause affidavit submitted in support of Plaintiff's arrest warrant.

110. In conducting the investigation and personally attesting to the factual allegations supporting the arrest warrant, Defendant performed investigative and complaining-witness functions rather than functions intimately associated with the judicial phase of the criminal process.

111. In *Kalina v. Fletcher*, 522 U.S. 118, 129–31 (1997), the United States Supreme Court held that a prosecutor who personally attested to the truth of factual allegations supporting an arrest warrant was not entitled to absolute prosecutorial immunity for that conduct because she acted as a complaining witness rather than as an advocate.

112. Accordingly, Defendant is not entitled to absolute prosecutorial immunity for his conduct in personally investigating the allegations against Plaintiff and executing the sworn probable-cause affidavit in the capacity of an investigator and complaining witness. Under *Kalina v. Fletcher*, 522 U.S. 118, 129–31 (1997), such conduct is not protected by absolute prosecutorial immunity merely because it was undertaken in connection with a criminal prosecution.

113. Plaintiff was never adjudicated guilty of any of the criminal offenses arising from Defendant Kenney's investigation and the resulting arrest warrant. No judgment of conviction was entered against Plaintiff in connection with those charges.

## IV. COUNT I — FALSE ARREST / UNREASONABLE SEIZURE 42 U.S.C. § 1983 — Against Defendant Martin J. Kenney, Individually

114. Plaintiff realleges and incorporates paragraphs 1 through 113 as though fully set forth herein.

115. Defendant acted under color of state law.

116. Plaintiff possessed a constitutional right to be free from unreasonable seizure under the Fourth Amendment.

117. Defendant personally prepared and submitted the affidavit supporting Plaintiff's arrest warrant.

118. Plaintiff alleges that Defendant's affidavit materially misrepresented the significance of the evidence concerning her legal residency.

119. Defendant's investigation documented facts relevant to Plaintiff's residency, including her prior residential arrangements, storm-related displacement, and evidence concerning her intent.

120. Plaintiff alleges that Defendant knowingly or recklessly disregarded the exculpatory significance of those facts.

121. Defendant's conclusions improperly equated disputed residency circumstances with knowing and intentional criminal fraud.

122. Plaintiff alleges that the materially misleading presentation of the evidence was necessary to the finding of probable cause.

123. Had the relevant evidence been properly and accurately presented, Plaintiff alleges that probable cause would not have existed for the charged offenses.

124. Defendant's actions directly caused Plaintiff to be subjected to an arrest warrant and a resulting deprivation of liberty.

125. Defendant's conduct constituted an unreasonable seizure in violation of the Fourth Amendment.

126. As a direct and proximate result, Plaintiff suffered damages arising from her arrest, including loss of liberty, emotional distress, humiliation, reputational injury, and other compensable harm.

**WHEREFORE**, Plaintiff demands judgment against Defendant Martin J. Kenney, individually, for compensatory damages, punitive damages as permitted by law, reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988, and all other appropriate relief.

## V. COUNT II — MALICIOUS PROSECUTION
## 42 U.S.C. § 1983 — Against Defendant Martin J. Kenney, Individually

127. Plaintiff realleges and incorporates paragraphs 1 through 113 as though fully set forth herein.

128. Plaintiff possessed a constitutional right to be free from unreasonable seizure pursuant to criminal legal process unsupported by probable cause.

129. Defendant personally participated in procuring the criminal legal process against Plaintiff by preparing and submitting the sworn affidavit underlying the arrest warrant.

130. Defendant's affidavit supplied the factual basis for three felony charges.

131. Plaintiff alleges that Defendant's conclusions concerning residency were materially misleading and failed to properly account for the governing legal standards and relevant evidence.

132. Defendant's investigation documented facts concerning Plaintiff's residential history, temporary displacement, and claimed intent.

133. Plaintiff alleges that Defendant knowingly or recklessly mischaracterized those circumstances as establishing deliberate criminal fraud.

134. Plaintiff alleges that Defendant's materially misleading representations were necessary to the judicial finding of probable cause.

135. Under *Williams v. Aguirre*, 965 F.3d 1147 (11th Cir. 2020), criminal legal process procured through intentional or reckless material misrepresentations may violate the Fourth Amendment.

136. Plaintiff alleges that the legal process supporting her seizure was constitutionally infirm.

137. Defendant's actions were a direct and foreseeable cause of the criminal proceedings and resulting seizure.

138. Plaintiff contends that the charges lacked constitutionally sufficient probable cause when the relevant facts and governing statutory elements are properly considered.

139. Plaintiff alleges that she suffered damages arising from the arrest and criminal proceedings, including emotional distress, humiliation, reputational injury, and loss of liberty.

140. Plaintiff seeks relief under this Count upon establishment of the favorable termination of the underlying criminal proceedings and the remaining elements of a federal Fourth Amendment malicious-prosecution claim.

**WHEREFORE**, Plaintiff demands judgment against Defendant Martin J. Kenney, individually, for compensatory damages, punitive damages as

permitted by law, reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988, and all other appropriate relief.

## VI. COUNT III — FALSE ARREST / UNREASONABLE SEIZURE — OFFICIAL-CAPACITY LIABILITY 42 U.S.C. § 1983 — Against Defendant Martin J. Kenney, in His Official Capacity, Pursuant to *Monell*

141. Plaintiff realleges and incorporates paragraphs 1 through 113 as though fully set forth herein.

142. Plaintiff brings this Count against Defendant in his official capacity pursuant to the governmental-liability principles established in *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

143. Under *Monell*, a local governmental entity may be held liable under 42 U.S.C. § 1983 when an official policy, established custom, or decision attributable to a final policymaker is the moving force behind a constitutional violation.

144. Such liability is not based solely upon the employment relationship between a governmental entity and the individual who committed the challenged act.

145. Plaintiff alleges that Defendant acted within the course and scope of his governmental investigative responsibilities when conducting the investigation and procuring the arrest warrant.

146. Defendant exercised governmental investigative authority when evaluating Plaintiff's residency, preparing the sworn affidavit, and seeking criminal legal process.

147. Plaintiff alleges that Defendant's challenged conduct reflected an unconstitutional application of residency standards that treated disputed factual circumstances as establishing intentional criminal fraud.

148. The alleged constitutional deprivation arose from the procurement of an arrest warrant through a materially misleading assessment of the evidence and the legal requirements of the charged offenses.

149. Plaintiff alleges that the challenged investigative conduct resulted in the deprivation of her Fourth Amendment right to be free from unreasonable seizure.

150. To establish official-capacity liability under *Monell*, Plaintiff must demonstrate that the challenged conduct was undertaken pursuant to an actionable policy, established custom, or decision of a final policymaker of a local governmental entity.

151. Plaintiff further must establish that the policy, custom, or final policymaker decision was the moving force behind the alleged constitutional violation.

152. Plaintiff alleges that the procurement of the arrest warrant caused her to be subjected to an unreasonable seizure and resulting damages.

153. Plaintiff seeks to impose official-capacity liability only to the extent that the challenged conduct is legally attributable to a governmental entity subject to *Monell* and the requisite policy, custom, final policymaker action, and causation are established.

**WHEREFORE**, Plaintiff demands judgment on Count III for compensatory damages, reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988, and such additional relief as may be legally available against a proper governmental defendant.

## VII. COUNT IV — MALICIOUS PROSECUTION — OFFICIAL-CAPACITY LIABILITY
## 42 U.S.C. § 1983 — Against Defendant Martin J. Kenney, in His Official Capacity, Pursuant to *Monell*

154. Plaintiff realleges and incorporates paragraphs 1 through 113 as though fully set forth herein.

155. Plaintiff brings this Count against Defendant in his official capacity pursuant to 42 U.S.C. § 1983 and the governmental-liability principles recognized in *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

156. Plaintiff possessed a constitutional right to be free from unreasonable seizure pursuant to criminal legal process unsupported by probable cause.

157. Defendant acted under color of state law when investigating Plaintiff and procuring the arrest warrant.

158. Defendant's affidavit supplied the factual basis for the criminal charges brought against Plaintiff.

159. Plaintiff alleges that Defendant materially mischaracterized disputed residency circumstances and failed to properly account for evidence relevant to the elements of the charged offenses.

160. Plaintiff further alleges that Defendant's conduct caused the issuance of constitutionally defective criminal legal process.

161. The alleged constitutional violation arose from the use of governmental investigative authority to procure criminal legal process through a materially misleading probable-cause presentation.

162. Under *Monell*, official-capacity liability may attach to a local governmental entity when an actionable policy, established custom, or final policymaker decision directly causes the constitutional deprivation.

163. Plaintiff alleges that Defendant's challenged conduct occurred in the exercise of his assigned governmental investigative responsibilities.

164. Plaintiff contends that the procurement of criminal legal process based upon materially misleading residency allegations violated her Fourth Amendment rights.

165. Plaintiff further contends that the resulting prosecution and seizure caused compensable constitutional injury.

166. Plaintiff must establish that any actionable governmental policy, custom, or final policymaker decision was the moving force behind the alleged unconstitutional prosecution and seizure.

167. Plaintiff seeks official-capacity liability only upon establishing that Defendant's challenged conduct is legally attributable to a local governmental entity subject to *Monell*.

168. Plaintiff further seeks relief under this Count upon establishing the favorable termination of the underlying criminal proceedings and the remaining elements of a Fourth Amendment malicious-prosecution claim.

**WHEREFORE**, Plaintiff demands judgment on Count IV for compensatory damages, reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988, and such further relief as may be legally available against a proper governmental defendant.

## VIII. DAMAGES

169. As a direct and proximate result of the alleged constitutional violations, Plaintiff suffered injuries and damages arising from her arrest and the criminal proceedings.

170. Plaintiff seeks compensation for loss of liberty, emotional distress, mental anguish, humiliation, reputational injury, and any other losses established by competent evidence.

171. Plaintiff seeks punitive damages against Defendant in his individual capacity to the extent permitted by federal law.

172. Plaintiff seeks reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988.

173. Plaintiff does not seek punitive damages against a governmental entity under *Monell*.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court:

A. Assume jurisdiction over this action;

B. Enter judgment in favor of Plaintiff on each claim established by the evidence and applicable law;

C. Award compensatory damages in an amount to be determined by the jury;

D. Award punitive damages against Defendant in his individual capacity, to the extent permitted by law;

E. Award reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988;

F. Award prejudgment and postjudgment interest as permitted by law;

G. Grant declaratory relief to the extent an actual, ongoing controversy and an appropriate legal basis for such relief are established; and

H. Award such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury on all issues so triable as a matter of right pursuant to Federal Rule of Civil Procedure 38.

Respectfully submitted,

*/s/ Anthony F. Sabatini*
ANTHONY F. SABATINI, ESQ.
FL BAR No. 1018163
SABATINI LAW FIRM, P.A.
1601 E. 1ST AVENUE
MOUNT DORA, FL 32757
T: (352)-455-2928
anthony@sabatinilegal.com

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been furnished this 22nd day of October 2026, via email to all parties of record.

*/s/ Anthony F. Sabatini*